Bertram Harnett, J.
Robert and Barbara,Veit live in their own home in Merrick with their three children. The home is subject to a first mortgage to • the Bowery Savings Bank (Bowery) ,and a second mortgage in favor of the Island Federal Savings & Loan Association. Since they have little means, the Veits have been receiving assistance under the aid to dependent children program (ADC) since August of 1968. However, they have not 'been able to obtain a shelter allowance from the Nassau 'County Social Services Department, because the department claims that $149.03 monthly payments on their first mortgage and $26.26 monthly payments on their second mortgage total $175.29 each month and exceed the $160 maximum monthly shelter allowance for a family of five permissible under the department rules. Mr. Veit’s father paid $313.40 on the July and August installments on the first mortgage, as well as the two installments of $26.26 on the second mortgage, and, by affidavit, he indicates he will continue to pay the second mortgage. Despite this, the first mortgage has been in arrears since September of 1968 and the Bowery has informed the Veits that the mortgage will be foreclosed if the arrears are not satisfied by February 26, 1969.
The Veits, as petitioners, have brought on this petition by order to show cause to have the court annul the Social Services Commissioner’s decision denying the shelter allowance as being arbitrary and in violation of statutory authority. They seek a direction to the Commissioner that the mortgage arrears be satisfied and a monthly shelter allowance in the amount of $149.03, the monthly first mortgage payment, be granted.
The Commissioner, as respondent, opposes this application, contending:
1. The application is improperly before this court, as the petitioners have failed to exhaust their administrative remedies by not seeking a hearing pursuant to subdivision 2 of section 353 of the Social Services Law; and
2. The petitioners do not have a legal right to the relief sought because their total mortgage payments exceed the $160 maximum monthly shelter allowance for a family of five.
When the Veits fell behind in their mortgage payments and they did not get a shelter allowance, they could have appealed to the State Board for a hearing (Social Services Law, § 353, subd. 2), and gotten a determination, which, if adverse, they could have challenged by an article 78 proceeding. The Veits did not do this. Apparently, they are unsophisticated folk who were not represented by counsel and who lacked knowledge of *119 their rights and how to enforce their rights. Moreover, being without means, they did not think in terms of lawyers and legal process. They are fortunate that their interests are now being represented by the Nassau County Law Service Committee, albeit at the eleventh hour. Their mortgage on their home is to be foreclosed on February 26,1969. Regardless of what they should have done in the past, it would be futile at this stage to seek the appropriate administrative remedies. This is in the context in which the court must address itself to their petition.
The petitioners are not required to exhaust their administrative remedies where to do so would be an exercise of futility. It is the settled law of this State that a person may proceed by way of an article 78 proceeding without exhausting his administrative remedies where the relief provided by such remedy would be inadequate (Dailey v. City of New York, 170 App. Div. 267, affd. 218 N. Y. 665; Boston & Maine R. R. v. Delaware & Hudson Co., 238 App. Div. 191; Lesron Junior, Inc. v. Feinberg, 13 AD 2d 90).
The rationale of these cases is apposite here. In face of the fact that the Bowery will foreclose the Veits’ mortgage imminently, the Commissioner urges that the Veits should seek a ‘ ‘ hearing ’ ’ although this procedure is neither expeditious nor calculated to furnish the requisite relief in the time available. Under title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York (18 NYCRR 84.6, 84.15) a hearing in cases involving suspension of assistance is required to be held by the Department of Social Services within 10 working days from the date the request for such hearing is received by the department and in such cases a decision is to be issued not later than 12 working days from the close of the hearing.
It is interesting to note that the Commissioner quite properly cites People ex rel. Broadway & 96th St. Realty Co. v. Walsh (203 App. Div. 468). This case approves the procedure of appeal within the line of administrative officials before allowing recourse to the courts. However, the court there bottomed its approval contingent upon ‘ ‘ that substantial justice be done in these circumstances ”. It is clear that to require the petitioners to exhaust their administrative remedies here would not result in substantial justice.
The question of substantive relief is not so easily determined. Sections 62 (subd. 1), and 131 (subd. 2) of the 'Social .Services Law provide a general mandate for social services officials.
Section 62 (subd. 1) provides: “1. * * * each public welfare district shall be responsible for the assistance and care *120 of any person who resides or is found in its territory and who is in need of public assistance and care which he is unable to provide for himself.”
Section 131 (subd. 2) states: “2. As far as possible families shall be kept together, they shall not be separated for reasons of poverty alone, and they shall be provided services to maintain and strengthen family life * * * Whenever practicable, assistance and service shall be given a needy person in his own home.”
Both parties rely on the rules and regulations of the department and the commission which provide the framework for the implementation of this mandate. Title 18 of the Official Compilation of 'Codes, Bules and Regulations of the State of New York (18 NYCRB 80.12 [b]) provides: “ (b) When allowance is discretionary. In other cases, a public welfare official may, in his discretion, include in the grants he makes to a recipient of * * * ADC who owns real property which he uses as his home, allowances in lieu of rent to enable such recipient to make payments required to be made on such property for mortgage installments, * * * but such allowances , shall not exceed the amount that such official would allow under his agency’s rent schedule if the recipient were required to pay rent.” And section 352,4 (subd. [e]) (18 NYCRB 352.4 [e] [2] [ii]), which authorizes the Commissioner to fix a shelter allowance, provides that, in part :
“ (ii) Amortization. The amount required to amortize a mortgage on the recipient’s property shall be included in the carrying charges * * * when * * * it is essential to retain the home of the recipient and the carrying charges do not exceed the maximum of the established rent schedule.”
The Commissioner interprets these sections to mean that, if the carrying charges in any way exceed the maximum of the established rent schedule, his department cannot provide any assistance.
The Veits, on the other hand, seek the sum of $1,239.61, the aggregate of the back first mortgage payments, and the future monthly payment of carrying charges of $149.03, all of which monthly payments are within the statutory allowance. They do not request assistance for the second mortgage payments, stating that such payments of $26.26 are being assumed by Mr. Veit’s father.
The cases cited by the Commissioner in support of the dismissal of this application are not persuasive. Matter of Ives (N. Y. L. J., Feb. 4, 1969, p. 25, col. 4) déált with a petition *121 for a baby-sitting allowance; Matter of Turner v. Barbaro (56 Misc 2d 53) dismissed an article 78 proceeding requiring the respondent to permit the petitioner to examine its records pertaining to the granting of public assistance to the petitioner. These matters are far less serious than a petition brought to prevent a family from losing its home. The policy underlying strict adherence to a statutory shelter allowance would be to forestall applicants from maintaining relatively extravagant quarters with partial subsidization from public funds. This is distinctly not the case with the Veits, who maintain a home shelter with reasonable first mortgage charges but who fail because of a small added borrowing charged as a second lien on their home.
The petitioners have made an uncontroverted reference to the Nassau County Housing Report indicating that the scarcity of housing in Nassau County would probably result in the Veit family’s having to be housed in a motel or rooming house after the foreclosure of the mortgage of the Viets ’ home. The financial cost to the respondent to house them would probably be greater than the amount requested by the Veits. The cost to the strength and stability of the Veit family occasioned by the loss of their home doubtless would be immeasurably greater (see 'Social Services Law, § 62, subd. 1).
These factors buttress the court’s view of the undesirability of the situation which will obtain if the requested relief is not granted.
The court finds that, under the circumstances of this case, particularly in light of Mr. Veit’s father’s offer to pay the second mortgage, the respondent acted arbitrarily in refusing to provide for the petitioners’ shelter needs. Accordingly, the court directs the respondent, in accordance with the statutory duty placed upon him by the Social Services Law and the Regulations of the State Department of Social Services, to make the payments for the mortgage arrears totaling $1,239.61 and to provide a shelter allowance to the petitioners while they remain in need of assistance in the amount of their first mortgage carrying charges so long as they do not exceed the maximum amount authorized under the shelter allowance schedule.
The court conditions the granting of the petition upon the attachment to the order of a certified copy of a written assumption or guarantee of the second mortgage by Charles Veit, the father of Robert Veit.